# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| GREGORY CORMIER | CIVIL ACTION NO. 05-0244-LC |
| VS. | SECTION P |
| BURL CAIN, WARDEN | JUDGE TRIMBLE |
| | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. § 2254) filed by *pro se* petitioner Gregory Cormier on February 7, 2005. Cormier is an inmate in the custody of Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Louisiana State Penitentiary, Angola, Louisiana where he is serving hard labor sentences totaling 115 years following his attempted second degree murder, armed robbery and aggravated crime against nature convictions in Louisiana's Fourteenth Judicial District Court, Calcasieu Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

The petition [Doc. 1-1], accompanying memoranda [Doc. 1-3, Doc. 1-4], and exhibits [Doc. 1-6, Doc. 7-2], amended petition [Doc. 7], response in opposition [Doc. 16], the State's answer [Doc. 15-1] and memorandum [Doc. 15-2], and the state court trial, appeal, and post-conviction record [Doc. 15-3] submitted by the respondent, along with the presumptively reliable published jurisprudence of the State of Louisiana establish the following:

## 1. Trial

Petitioner and his co-defendant, Michael Owen, were arrested on October 14, 1982. They were jointly charged via grand jury indictment with attempted second degree murder, aggravated crime against nature, and armed robbery. Both filed a Motion to Suppress tangible evidence obtained in the course of an allegedly unconstitutional search. The trial court denied the motion and the defendants sought a writ of review in the Third Circuit Court of Appeals. That court denied writs. Cormier and Owen then sought further review in the Louisiana Supreme Court. On June 27, 1983, the Louisiana Supreme Court granted writs and remanded the case to the Third Circuit. See *State v. Michael Owen and Gregory Cormier*, 435 So.2d 454 (La. 1983).

On October 12, 1983, the Third Circuit again denied writs. See *State v. Cormier*, 438 So.2d 1269, 1271 (La. App. 3d Cir. 1983). The defendants again sought writs in the Louisiana Supreme Court. On December 16, 1983, the Supreme Court granted writs and agreed to a further examination of the case. *State of Louisiana v. Michael Owen and Gregory Cormier,* 443 So.2d 599 (La. 1983). Thereafter, on June 25, 1984, the Supreme Court affirmed the judgment, denied the Motion to Suppress, and remanded the case to the trial court for further proceedings. *State of Louisiana v. Michael Owen and Gregory Cormier*, 453 So.2d 1202 (La. 1984). On November 5, 1984, petitioner was convicted of attempted second degree murder, armed robbery, and aggravated crime against nature in Louisiana's Fourteenth Judicial District Court. He was sentenced to serve consecutive hard labor sentences totaling 115 years. [Doc. 1, paragraphs 1-4].

## 2. Direct Appeal

Petitioner appealed and argued seven assignments of error.[1]  On March 5, 1986, the Third Circuit affirmed his conviction.  *State v. Cormier*, 487 So.2d 1237 (La. App. 3d Cir. 1986). Petitioner sought writs in the Louisiana Supreme Court. That court denied writs on June 6, 1986. *State v. Cormier*, 489 So.2d 244 (La. 1986).

## 3. Post-Conviction
### a. Discovery

_____From sometime in May, 1989 through November 2, 1990,  petitioner sought discovery of unspecified documents from law enforcement agencies located within the Fourteenth Judicial District.  These requests were denied by the district court, the court of appeals, and ultimately by the Louisiana Supreme Court because petitioner failed to state a particularized need for the documents. See *State ex rel. Gregory Cormier v. Hon. A.J. Planchard, District Judge, 14th Judicial District Court*, 568 So.2d 1065 (La. 1990).[2]

### b. Motion to Correct Illegal Sentence

On September 8, 1992, petitioner filed a Motion to Correct an Illegal Sentence in the Fourteenth Judicial District Court.  Petitioner argued that the imposition of consecutive

---

[1] Petitioner argued the following Assignments of Error:

(1) The trial court erred in permitting the State to amend its answer to discovery  on the day of trial to include fingerprint analysis that was available twenty months earlier;

(2) The trial court erred in failing to grant motions for a mistrial based upon

     (a) State's failure to introduce evidence seized in the search of the house where petitioner was arrested;

     (b) refusal to permit cross-examination of the officers who seized the evidence;

(3) The trial court erred in denying a Motion in *Limine* which sought to exclude scientific reports and, the trial court further erred in denying petitioner's attempts to restrict the presentation of evidence;

(4), (5), and (6) The trial court denied petitioner a fair trial when it denied petitioner access to exculpatory evidence in the form of statements of Grant Miller; and, the evidence was insufficient to convict;

(7) Excessiveness of sentence.  See *State v. Cormier*, 487 So.2d 1237, 1240-43.

[2] See Doc. 15-3, pp. 1409-1553.  In his Memorandum, petitioner alleged that pursuant to a Public Records request, he obtained a copy of the District Attorney's file in August, 1994. [See Doc. 1].

maximum sentences did not comply with the provisions of LSA C.Cr.P. art. 894.1 because petitioner was convicted solely on the basis of circumstantial evidence. The State answered the motion and argued that the motion should be treated as an Application for Post-Conviction Relief and dismissed as repetitive. [Doc. 15-3, pp. 1554-1564]. On September 18, 1992, the trial court construed the pleading as an Application for Post-Conviction Relief and dismissed it as "untimely, repetitive and successive, in accordance with the Louisiana Code of Criminal Procedure Articles 930.8 and 930.4." [Doc. 15-3, p. 1565].

### c. Application for Post-Conviction Relief

Petitioner claims that he filed, on an unspecified date, an Application for Post-Conviction Relief in the Fourteenth Judicial District Court raising a single claim of ineffective assistance of counsel. On another undisclosed date this petition was denied.  Petitioner thereafter claims to have sought further review in the Louisiana Supreme Court. [Doc. 1, paragraph 11(a) and (d)(1)].[3]

### d. Public Records

On October 19, 1994, petitioner submitted a public records request to the Sulphur,

---

[3] In his Memorandum, petitioner alleged that he filed an Application for Post-Conviction Relief on some unspecified date in 1993. He claimed that this application was dismissed as untimely on November 18, 1993. [Doc. 1, Memorandum, p. 3]. The record establishes that petitioner filed an Application for Post-Conviction Relief in February, 1993. [Doc. 15-3, pp. 1955-2026]. The Application was dismissed as untimely, repetitive and successive on November 18, 1993. [*id*., p. 2029]. It is presumed that this pleading is the one petitioner refers to in his memorandum.

Petitioner's co-defendant, Michael (aka "Mike") Owen, also filed a petition for writ of *habeas corpus* and an application for post-conviction relief in January, 1993. Both of these pleadings were dismissed as either inappropriate or untimely. [See Doc. 15-3, pp. 1568-1612; 2040-2064].  His writ application in the Third Circuit [*id*, pp. 2065-2089]. was denied on July 27, 1993. The Third Circuit agreed that *habeas corpus* relief was unavailable and that Owens's application for post-conviction relief was untimely. *State of Louisiana v. Mike Owen*, No. K 93-618 (La. App. 3 Cir. 7/27/93). [*id*., p. 2090]. Owens sought further review in the Louisiana Supreme Court and his writ application was docketed as 93-KH-2327. [*id*., pp. 2091-2108]. The Supreme Court denied writs on October 13, 1995.  *State ex rel. Owen v. State*, 93-2327 (La. 10/13/95), 661 So.2d 486.

4

Louisiana, Police Department seeking arrest records for four individuals who testified against him at trial–John Church, William Grant Miller, Carl J. Evans, and Ray Bass, Jr. The request was denied and petitioner was advised to obtain a court order for the release of the records. [Doc. 15-3, p. 1616]. On or about November 3, 1994, petitioner filed a Petition for Writ of Mandamus seeking an order directing the release of the witnesses' arrest records. Petitioner alleged, "these people received favors in exchange for their testimony against petitioner". Specifically, he alleged that these individuals had been found to be in possession of drugs; however, he claimed that they were not prosecuted "because of their testimony against petitioner." [*id.* 1613-1615]. On November 29, 1994, the district judge denied the petition and ruled that the arrest records sought by petitioner were not public records. [*id.*, p. 1618].

### e. Co-Defendant's Application for Post-Conviction Relief (New Evidence Claims)

On December 16, 1994, petitioner's co-defendant, Michael Owen filed an Application for Post-Conviction Relief in the Fourteenth Judicial District Court raising a claim of "newly discovered evidence." [*id.*, 1620-1651; 2110-2141]. Owen claimed that he had recently obtained a copy of the District Attorney's case file through a public records request. He claimed that he discovered the following items of exculpatory evidence: (a) the pre-trial statement of Carl Evans, (b) the victim's pre-trial statement; (c) the offense and supplemental offense reports; (d) Jacob Hebert's pre-trial statement; (e) photo lineups of the petitioners; and, (f) Sandra Leger's pre-trial statement.

According to Owens this newly found evidence established that Carl Evans did not freely and voluntarily consent to the search of his residence. He argued that Evans was not available to testify at the Motion to Suppress. He maintained that this new evidence established that police

officers committed perjury when they testified at the suppression hearing. He also argued that the evidence established that the victim had named another person as her assailant and that the victim was unable to pick the petitioner out of a photo array. Finally, he argued that the newly discovered evidence revealed that Sandra Leger's trial testimony contradicted her pre-trial statement. [*id.* 1630-1631].

Owen's application for post-conviction relief was denied as untimely on December 19, 1994; the trial court ruled that the evidence, although newly discovered, could have been discovered earlier had Owen diligently pursued his public records request. [*id.*, pp. 1783-1784; 2156-2158]. Owens sought supervisory writs in the Third Circuit and his writ application was docketed as K 95-407. [*id.* , pp. 22146-2155]. On June 29, 1995, the writ application was denied. The Third Circuit ruled that there was no error in the trial court's ruling and noted that Owens did not make his request for public records until almost ten years after his conviction had become final. *State v. Michael Owen*, 95-407 (La. App. 3 Cir. 7/29/1995). [*id.*, p. 2162]. On October 13, 1995, Owens's writ applications to the Supreme Court were denied as untimely. *State ex rel. Mike Owen v. State*, 93-2327 (La. 10/13/95), 661 So.2d 486. [*id.*, pp. 2163-2165].

### f. Petitioner's Application for Post-Conviction Relief (New Evidence)

On or about November 11, 1994, petitioner filed an Application for Post-Conviction Relief Concerning Newly Discovered Evidence.[4] [Doc. 15-3, pp. 1790-1945]. Petitioner's allegations concerning the newly discovered evidence were identical to those raised by his co-

---

[4] In his Memorandum, petitioner alleged that he filed this second Application for Post-Conviction Relief "immediately" after he obtained the District Attorney's file. [*Id.*] The court record reflects that on August 25, 1994, and again on September 9, 1994, Mr. Cormier was provided a complete copy of the District Attorney's file. [Doc. 15-3, pp. 1763-1764].

defendant, Mr. Owen. More particularly, he argued that the newly discovered evidence established that the prosecution elicited false testimony from the police officers regarding Mr. Evans's alleged consent to search.

On November 18, 1994, the State filed a procedural objection to petitioner's Application for Post-Conviction Relief. [*id*., pp. 1946-1952]. On November 23, 1994, the district court denied the application as untimely, successive, and as an abuse of writ. [*id*., p. 1953]. Petitioner apparently sought further review in the Louisiana appeals courts. [Doc. 1, paragraph 11(b) and (d)(2)]. Petitioner claimed that his writ application to the Third Circuit was assigned Docket Number 95-00331 and was denied on August 16, 1995. [Doc. 1, Memorandum, p. 4]. That allegation is confirmed by the court record. [Doc. 15-3, p. 2033].

On September 5, 1995, petitioner sought writs in the Louisiana Supreme Court. His writ application was given docket number 95-KH-2208. [Doc. 15-3, p. 2034]. While these state proceedings were still pending, petitioner filed a petition for writ of *habeas corpus* in this court.[5]

On October 4, 1996, the Louisiana Supreme Court granted petitioner's writ application and ordered the Fourteenth Judicial District Court to determine whether or not the state had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and whether or not petitioner's recent discovery of this evidence exempted petitioner from the timeliness provisions of La. C.Cr.P. art. 930.8. See *State ex rel. Gregory Cormier v. State*, 95-2208 (La. 10/4/96), 680 So.2d 1168.

---

[5] According to the docket sheet, petitioner filed his petition for writ of *habeas corpus* in this court on May 6, 1996. On May 2, 1997, upon motion of the petitioner, the petition was dismissed without prejudice to allow the petitioner to exhaust state court remedies. See *Cormier v. Warden*, 2:96-cv-1136. [See also, Doc. 1, Memorandum, p. 4].

On December 23, 1996, the District Court authored Written Reasons and Order denying the application for post-conviction relief. In that order, the district court interpreted the Supreme Court's October, 1996 order as a mandate "to decide whether there were any due process violations set forth in *Brady v. Maryland* [citation omitted] . . . during the trial of this matter." The court then ruled,

> This Court will not address any *Brady* arguments at this juncture in making its decision. Rather, this Court's decision is based upon the fact that nowhere in defendant's Bill of Particulars is a request for witness statements, nor is there a request for any statements of officers investigating the above matter that would [tend?] to exculpate defendant. [*id.*, p. 2241].

On January 10, 1997, petitioner filed a Motion for Reconsideration of Brief on Remand from the Louisiana Supreme Court and Answer to Judge Planchard's Order. [*id*, pp. 2243-2246]. Sometime in April, 1997, he re-submitted his original Application for Post-Conviction Relief for reconsideration in light of the Supreme Court's remand order. On April 24, 1997 Judge Minaldi[6] authored written reasons for judgment and denied relief. [id., pp. 2249-2250].

On May 22, 1997, petitioner filed a writ application in the Third Circuit Court of Appeals. [*id.*, pp. 2251-2262]. This writ application was assigned Docket Number 97-676. [*id*, pp. 2173-2174]. On June 18, 1998, the Third Circuit denied writs noting, "The Relator seeks enforcement of a remand order issued by the Louisiana Supreme Court. Relator contends that the trial court failed to comply with the terms of the remand order. Relator's proper remedy is to apply to the Supreme Court for enforcement of its previous ruling." *State of Louisiana v. Gregory Cormier*, 97-676 (La. App. 3 Cir., 6/18/98). [*id.*, p. 2170]. On August 5, 1998, petitioner

---

[6] Judge Minaldi apparently replaced Judge Planchard sometime between December 1996 and April 1997.

filed the writ application in the Supreme Court. His pleadings were assigned Docket Number 98-KH-2111. [*id*., pp. 2177-2273].

      On December 18, 1998, the Supreme Court again granted writs on behalf of petitioner and ordered the Fourteenth Judicial District Court to comply with its October, 1996 order. See *State ex rel. Gregory Cormier v. State of Louisiana*, 98-2111 (La. 12/18/98), 731 So.2d 274. [See also, Doc. 1, Memorandum, p. 4; Doc. 15-3, p. 2274]. On February 17, 1999, petitioner filed a Motion for Appointment of Counsel in the District Court. [*id*., pp. 2329-2330].[7]   On March 30, 1999, the District Court acknowledged the order of the Supreme Court and ordered the State to file an answer or any procedural objections. [*id*., p. 2275]. On April 28, 1999, the State filed its answer. [id. pp. 2277-2288]. On May 14, 1999 petitioner filed a "Motion for Permission to Traverse the District Attorney's Answer and to File a Pre-Hearing Brief." [*id*., pp. 2289-2290].

      On May 26, 1999, the District Court filed Written Reasons and Order rejecting petitioner's Application for Post-Conviction Relief.  Therein, the District Court noted that the petition in question was the fourth application for post-conviction relief filed by the petitioner. The court also noted that the petition in question had been filed on November 11, 1994 and was based upon petitioner's allegation of newly discovered evidence.  The court analyzed each of petitioner's claims and found them to be without merit. [*id*. pp. 2303-2306].  On May 26, 1999, a copy of the Written Reasons and Order was sent to petitioner by the Calcasieu Parish Clerk of Court. The cover letter accompanying the judgment stated, "You are hereby notified that Judge Patricia Minaldi has denied your 'Application for Post Conviction Relief.' I have enclosed a copy

---

[7]For reasons unknown to the undesigned, the District Court granted this motion on December 14, 1999 and petitioner was advised of this fact by the Clerk of Court shortly thereafter. [*id*. pp. 2331-2333].

of the Written Reasons and Order signed May 26, 1999." [*id.*, p. 2307].

Sometime prior to May 20, 1999, petitioner complained again to the Supreme Court that his application for post-conviction relief had not been acted upon as ordered by the Supreme Court. On May 20, 1999, the Supreme Court wrote a letter of inquiry to the District Court and directed the judge to provide a response within ten days. [*id.* p. 2325]. In any event, the Court was satisfied with the action taken by the District Court and so, on June 18, 1999, the Supreme Court denied the writ application as moot. *State ex rel. Gregory Cormier v. State*, 98-2111 (La. 6/18/1999), 745 So.2d 614. [*id.*, p. 2326].

On June 30, 1999, petitioner filed a writ application in the Third Circuit Court of Appeals, which was assigned Docket Number 99-987. [*id.*, p. 2327-2328]. On March 28, 2000, the Third Circuit denied writs stating,

> There is no error in the trial court's ruling denying Relator's application for post-conviction relief as meritless. There are no material differences between the pretrial statements at issue and the trial testimony of the witnesses. The statements therefore provided no grounds for impeachment and failure to provide these statements to the defense did not render the Relator's trial unfair. See *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985), and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995).

*State v. Cormier*, 99-987 (La. App. 3 Cir. 3/28/2000). [*id.*, p. 2334].

On February 23, 2001, petitioner filed a "Motion to Fix" in the District Court. [*id.*, pp. 2336-2341]. Petitioner provided the basic procedural chronology of his fourth Application for Post-Conviction Relief. Among other things, petitioner alleged,

> On December 14, 1999, the district court issued written reasons and order petitioner's application for post conviction relief be granted. The district court further ordered that the public defender's office provide representation to petitioner. Petitioner avers that since the December 14, 1999, order, he has not

been contacted by anyone from the public defender's office. In addition, petitioner avers that no further proceedings have been conducted by the district court's since its December 14, 1999 order.

[*id.*, pp. 2337-2338].

Petitioner then prayed "that the district court's grant of post conviction relief be made peremptory and that the matter be fixed for evidentiary hearing at the earliest possible date." [*id.* p. 2338].

On March 14, 2001, the district court authored Written Reasons and Order in response to petitioner's motion. The court concluded, "As the attached documentation demonstrates, Petitioner's allegations are factually incorrect. His post conviction relief was again denied on May 25, 1999. His writ was denied by the court of appeal on March 28, 2000." [*id.*, p. 2376-2381].

On May 15, 2001, petitioner submitted to the District Court a Notice of Intent to Apply for Remedial Writs with the Third Circuit Court of Appeals. Therein, he claimed that the judgment denying his fourth Application for Post-Conviction Relief had been served on him on March 30, 2001. [*id.*, p. 2382-2384].

On May 30, 2001, the District Court signed an order stating, "Petitioner is entitled to file his application for supervisory writs in the Louisiana Court of Appeal, Third Circuit, in accordance with the law." [*id.*, p. 2385].

On October 16, 2002, petitioner wrote a letter to the District Court. Therein, he alleged that the previous order of court appointed T. Michael Jordan as his attorney. He further alleged, "I've tried to file my appeal myself and the Clerk of Court informed me that I have an attorney of record and that he (T. Michael Jordan) must file my appeal in order to avoid duplicate appeals. I

forwarded my appeal to him for filing and for eight months to no avail did I hear from him after repeated attempts to contact him. Finally my parents went personally to the Clerk of Court and found out that nothing had been filed in my behalf since 2000. . . . Now I come to you seeking that you appoint another defender to represent my appeal." [*id*., p. 2386].

On October 29, 2002, the District Court judge advised petitioner, "Your allegations in your letter dated October 16, 2002 do not conform with the record in this case. Based on previous findings of misrepresentation of facts this court notified you that your filing would not be considered without complete documentation attached to support your claim." [*id*., p. 2389].

On November 20, 2002, petitioner filed a pleading entitled "Original Application for Writ of Certiorari and Review on Behalf of Gregory Cormier" in the District Court. The pleading sought review of the Third Circuit's judgment "rendered August 16, 1995" under Docket Number 95-331. [*id*., p. 2389-2470]. Among other things, petitioner therein admitted, "The district court was correct in its reference to the May 25, 1999 denial of petitioner's application for post conviction relief. The court was likewise correct in stating that petitioner's application for writs to the Third Circuit Court of Appeal were denied March 28, 2000. However, the district court overlooked the fact that on December 1999, it issued written reasons and ordered petitioner's application for Post Conviction Relief be granted and that the public defender's office provide representation to petitioner . . . . Petitioner has no explanation why the district court reconsidered its prior denial of his application for post conviction relief, but believes that his action and/or inactions thereafter was in 'good faith.'" [*id*. p. 2393].

On May 30, 2003, petitioner corresponded with the Clerk of the Third Circuit Court of Appeal. Therein, petitioner claimed that he "mailed my post conviction application to the

designated court. As you can see it has been approximate [sic] (6) six months and my application has not been ruled on to this date. I am asking the court to accept this letter as a mandamus ordering the below court to rule in this matter." The letter was received and docketed by the Third Circuit on June 4, 2003, and was assigned Third Circuit Docket Number KH 03 -696] [Doc. 15-1, Vol. 7, p. 62]. On July 7, 2003, that writ application was denied because, "Relator did not provide this court with a copy of the post conviction relief application that he alleges he filed with the trial court. Accordingly, Relator's application is denied on the showing made." *State of Louisiana v. Gregory Cormier,* No. KH 03-696 (La. App. 3 Cir. 7/7/2003) [Doc. 15-3, Volume 7, p. 61[8]].

On July 30, 2003, petitioner submitted a copy of the "Original Application for Writ of Certiorari and Review on Behalf of Gregory Cormier" to the Third Circuit Court of Appeals. Petitioner's cover letter requested the Appeals Court to consider his filing as an Application for Writ of Mandamus directing the district court to act on the Application for Certiorari. The letter and attachments were filed and assigned Docket Number KH 03-1030. [Doc. 15-3, Vol. 7, pp. 64-132].

On July 31, 2003, the Third Circuit Court of Appeals corresponded with the Calcasieu Parish Clerk of Court's Office and requested the "Original Application for Writ of Certiorari and Review on Behalf of Gregory Cormier, if any, filed between June 2002 and July 2003, and the ruling thereon." This letter referenced a matter assigned the Third Circuit Court's Docket Number 03-1030-KH. [Doc. 15-3, p. 2472]. On the same date, the Clerk of the Third Circuit

---

[8] The Fourteenth Judicial District Court's record [submitted as exhibits associated with Doc. 15-3] consists of 7 bound volumes of documents. The pages in Volumes 1-6 are numbered sequentially from 1 - 2473. Volume 7 contains documents from the Third Circuit Court of Appeals and the pages are numbered sequentially from 1-132.

Court of Appeals notified the Calcasieu Parish District Attorney, the petitioner, the Calcasieu Parish Clerk of Court, and the District Court judge that a writ application was received and filed and assigned Docket Number 03-1030-KH. [*id.*, p. 2473].

On October 23, 2003, the Third Circuit denied writs stating

> The claims raised by the Relator are repetitive, having been considered by this court and found to be meritless in a previous application. See La. Code Crim. P. art. 930.4D and *State v. Cormier*, an unpublished writ bearing docket number 99-987 (La. App. 3 Cir. 3/28/2000). Further, the Relator's application is untimely and Relator states no facts warranting an exception to the post-conviction time limits. See La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 93-2330 (La. 9/5/95), 660 So.2d 1189.

*State of Louisiana v. Gregory Cormier*, KH 03-1030 (La. App. 3 Cir. 10/23/2003). [Doc. 15-3, p. 63].

Petitioner apparently filed an Application for Writ of *Certiorari* in the Louisiana Supreme Court sometime after the Third Circuit's ruling on October 23, 2003. Petitioner has not provided a copy of this writ application,[9] but a subsequent order of the Supreme Court reveals that petitioner sought writs to review the judgment of the Third Circuit Court of Appeal in the case mentioned above and assigned the Third Circuit's Docket Number KH 03-1030. The pleading was apparently filed in 2003 because it was assigned the Supreme Court's Docket Number 2003-KH-3370. Further, in his Memorandum, petitioner asserts that he sought review of the Third Circuit writ denial under that docket number.[10] In any event, the writ application was denied on

---

[9] Petitioner has provided a copy of what purports to be a Petition for Writ of Certiorari filed in the Louisiana Supreme Court. The document in question is undated, however, and apparently seeks review of a Third Circuit order rendered on August 16, 1995 under that court's docket number 95-00331. [Doc. 7, Exhibit M].

[10] In his Memorandum, petitioner has provided a somewhat confusing and convoluted statement concerning the events which transpired between 1999 and the present. He claims: because he believed that his application had been denied, petitioner sought writs in the Third Circuit Court of Appeals under that court's docket number 99-00987; on March 28, 2000, that court denied relief; he then filed a "Motion and Request to Fix a Date for an Evidentiary Hearing on Post-Conviction Application" which was denied on March 14, 2001; sometime in May,

14

January 7, 2005. See *State ex rel. Cormier v. State of Louisiana*, 2003-3370 (La. 1/7/05), 891 So.2d 674.

The petition for *habeas corpus*, signed on February 3, 2005, was received and filed in this court on February 7, 2005. Petitioner argues the following claims for relief:

1. The suppression hearing was unfair and unreliable due to the known false testimony presented by the prosecutor and the suppression of favorable evidence;

2. During trial the defense was deprived of the results of a photo array where the victim had been unable to identify petitioner;

3. Lt. McCann fabricated evidence which was used to convict petitioner;

4. Two separate people had named Carl Evans as being one of the perpetrators, but the prosecutor refused to disclose this information to the defense;

5. The prosecutor suppressed Sandra Leger's pretrial statement which would have impeached her trial testimony;

6. Petitioner was denied a fair trial when the trial judge denied his motions for a mistrial;

7. Petitioner was denied a fair trial when the defense was unsuccessful in having the evidence at trial restricted to the sole question of petitioner's guilt or non-guilt;

8. Petitioner was deprived of the effective assistance of counsel when his attorney failed to raise a valid double jeopardy defense; and,

---

2001, he filed a Motion to Reconsider and attached the letter he had received from the Clerk of Court; he claims the court did not respond and therefore he sought review in the Third Circuit under that court's docket number KH-03-1030; that court denied relief on October 23, 2003, and, it was from this judgment that petitioner sought relief in the Louisiana Supreme Court. [Doc. 1, Memorandum, p. 5]. The court record supplied by the Respondent clarifies the chronological history.

9.    Petitioner was deprived of the effective assistance of counsel when his attorney

failed to investigate and present his alibi defense.

Petitioner was ordered to amend his petition and to provide additional documents to

enable the court to determine whether or not his federal claims were properly exhausted, timely

under the provisions of 28 U.S.C. §2244(d), or the subject of a procedural default in the state

courts. [Doc. 5]. On June 6, 2005 petitioner amended his complaint. Therein petitioner stated

> Petitioner is unable to provide this Court with dated copies of the
> Application for Post Conviction Relief he filed in the Fourteenth
> Judicial District Court, dated copies of the writ applications he
> filed in the Third Circuit Court of Appeal, due to numerous
> amounts of this [sic] legal documents being misplaced by inmate
> counsel . . . .  Further, he is unable to provide the court with a copy
> of all of the rulings that were issued concerning all his post
> conviction applications from the 14th Judicial District Court and the
> Third Circuit Court of Appeal.
> [Doc. 7].

Petitioner submitted various documents relevant to the initial review of his claims. [Doc. 7,

Exhibits].

## LAW AND ANALYSIS

### 1. Timeliness Under the AEDPA

This petition was filed after the effective date of the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Therefore, the court must apply the provisions of AEDPA,

including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999);

*Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Title 28 U.S.C.

§2244(d)(1)(A) was amended by the AEDPA to provide a one-year statute of limitations for the

filing of applications for writ of *habeas corpus* by persons in custody pursuant to the judgment of

a state court.  This limitation period generally runs from the date that the conviction becomes final.  28 U.S.C. §2244(d)(1)(A).[11]

The statutory tolling provision set forth in 28 U.S.C. §2244(d)(2)  provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period.   *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2).  However, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998).  Federal courts may raise the one-year time limitation *sua sponte. Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

The AEDPA and the timeliness provision codified at §2241(d) took effect on April 24, 1996.  However, the limitation periods provided by the statute cannot be applied retroactively to bar claims by petitioners, such as Mr. Cormier, whose convictions were final  prior to the effective date of AEDPA. *United States v. Flores,* 135 F.3d 1000, 1006 (5th Cir. 1998).  Such petitioners are afforded a one-year grace period, or until April 24, 1997, to file an application for writ of *habeas corpus* in federal court. *Coleman v. Johnson,* 184 F.3d 398, 401 (5th Cir. 1999); *Flanagan v. Johnson,* 154 F.3d 196 (5th Cir. 1998);  *Villegas v. Johnson,* 184 F.3d at 469 (5th Cir.

---

[11]Petitioner does not suggest, nor do his pleadings imply, that the period of limitation should be reckoned from those events mentioned in subsections (B) or (C) of §2244(d)(1).  He does not claim the existence of any state created impediments which inhibited him from filing this federal petition; nor does he suggest that his present claims are based upon a constitutional right newly recognized by the United States Supreme Court.  Of course, §2244(d)(1)(D)  provides that the one-year limitations period may be reckoned from "...the date on which the factual predicate of the claim ... could have been discovered..." The record demonstrates that petitioner's discovery of the factual basis of his claim occurred at a point in time prior to the April 1996 effective date of the AEDPA. Therefore, as shown hereinafter, the limitations period herein should be reckoned in accordance with the "grace period" afforded petitioners whose convictions were final prior to the April, 1996 effective date of the AEDPA since both of the limitations period reckoning events relevant to this case occurred prior to the effective date of the AEDPA.

1999); *Flores, supra.*[12]  If the petition is not filed within the one-year grace period, the courts are

to apply the statutory tolling provision set forth in 28 U.S.C. §2244(d)(2) which provides that the

time during which a properly filed application for post-conviction relief was pending is state

court is not counted toward the limitation period.  *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir.

1999); *Coleman, supra; Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C.

§2244(d)(2).

Thus, based upon the foregoing, it is clear that petitioner had until April 24, 1997, within

which to file his federal *habeas corpus* petition.  Petitioner's Application for Post-Conviction

Relief based upon his discovery of new evidence was filed on November 11, 1994 [Doc. 15-3,

pp. 1790-1945].  It remained pending throughout the period of time that petitioner sought

appellate court review and, of course, remained pending after the Supreme Court's remand order

of October 4, 1996. [*State ex rel. Cormier v. State*, 680 So.2d 1169 (La. 1996)].

Petitioner's collateral attack remained pending throughout the proceedings conducted in

the Fourteenth Judicial District Court thereafter. It remained pending up to and including the date

upon which the Louisiana Supreme Court again remanded the case to the Fourteenth Judicial

District Court in December, 1998. See *State ex rel. Cormier v. State*, 98-2111 (La. 12/18/98), 731

So.2d 274.  It remained pending in the Fourteenth Judicial District Court after this second

remand. It then remained pending until March 28, 2000 when the Third Circuit Court of Appeals

---

[12] Petitioner's judgment of conviction and sentence became final for AEDPA purposes
sometime in 1986, ten years before the enactment of the AEDPA. Petitioner discovered the
factual basis for his claims in the late summer or early fall of 1994. See footnote 4, supra. Since
both of the limitations reckoning dates occurred prior to the April 24, 1996, effective date of the
AEDPA, petitioner should be afforded the benefit of the "grace period" and therefore, the
limitations period began on April 24, 1996. Petitioner had one year, or until April 24, 1997
within which to file his federal habeas corpus petition.

rendered its judgment denying writs. *State v. Cormier*, 99-987 (La. App. 3d Cir. 3/28/2000). Following March 28, 2000, there appears to have been no "properly filed application for State post-conviction or other collateral review . . . pending." The published jurisprudence shows no record of any Supreme Court writ judgments referencing the Third Circuit's judgment under Docket Number 99-987, therefore, the undersigned must conclude that petitioner did not seek timely review of the Third Circuit's judgment of March 28, 2000.

Petitioner did file a "Motion to Fix" in the Fourteenth Judicial District Court on February 23, 2001. [Doc. 15-3, pp. 2336-2341]. However, this pleading cannot be construed as a "properly filed application for State post-conviction or other collateral review." This Motion must instead be construed as an action in the nature of a mandamus[13] or, a motion to convene a contradictory hearing. Here, petitioner's "Motion to Fix" sought an order directing the trial court to fix an "evidentiary hearing on the merits." [Doc. 15-3, p. 2338]. It did not directly challenge petitioner's judgment of conviction and therefore, the Motion was not an application for post-conviction or collateral review.

According to the Fifth Circuit, "Congress meant to include within the scope of §2244(d)(2) those 'properly filed' applications, without respect to state nomenclature or the nature of the petitioner's state confinement, that, pursuant to the wording of § 2244(d)(2), seek 'review' of the 'pertinent judgment or claim.'" *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir.2002), *cert. denied*, 537 U.S. 1236, 123 S.Ct. 1360, 155 L.Ed.2d 202 (2003). Thus, the key

---

[13] As noted by the Fifth Circuit Court of Appeals, "In Louisiana, the scope and purpose of mandamus are consistent with its generally understood use. Under Louisiana law: 'Mandamus is an extraordinary remedy which must be used by courts sparingly to compel action that is clearly provided by the law, but only where it is the only available remedy or where the delay occasioned by the use of any other remedy would cause injustice.' *Sanders v. Wooldridge*, 729 So.2d 715, 717 (La.Ct.App.1999) ... Its 'purpose ... is to compel the performance of the duty owed to a person requesting a duty'. *Id.*" *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir.2002).

inquiry is whether the pleading in question sought "review" of the judgment pursuant to which petitioner is incarcerated. Ultimately, in the case cited above, the Fifth Circuit determined that a state court mandamus application requesting the trial court to rule on a state *habeas* application was not an application for collateral review with respect to prisoner's conviction, and thus did not toll one-year limitation period. *Moore, supra*, 298 F.3d at 367. Petitioner's Motion to Fix, liberally construed as a pleading in the nature of mandamus, can fare no better.

However, even assuming that the "Motion to Fix," should be construed so as to permit tolling of the AEDPA limitations period, it is clear that a period of 332 days, or 10 months and 26 days of the one-year period of limitation had already elapsed between March 28, 2000, when the Third Circuit denied writs and February 23, 2001, when petitioner filed his Motion. At best, petitioner's motion tolled the limitations period only until March 14, 2001, when the District Court authored Written Reasons which advised petitioner in no uncertain terms that his Application for Post-Conviction Relief had been denied by the District Court on May 25, 1999 and was again denied by the Third Circuit Court of Appeals on March 28, 2000. [See Doc. 15-3, pp. 2376-2381].

Thereafter, petitioner waited more than two months or until May 15, 2001, before filing his Notice of Intent to Apply for Remedial Writs to seek review of the order dismissing his Application for Post-Conviction Relief. His motion was granted on May 30, 2001, but he waited almost seventeen months, or, until October 16, 2002 before complaining to the District Court about his inability to file his "appeal." Ultimately, petitioner filed a series of pleadings in the Fourteenth Judicial District Court and the Third Circuit Court of Appeals which attacked, not the denial of the "Motion to Fix" but rather, the trial court's May 25, 1999 decision denying his

Application for Post-Conviction Relief on the merits.[14]  As ultimately noted by the Third Circuit, those claims were repetitive since the Third Circuit, as admitted elsewhere by petitioner, had already considered those claims and found them without merit in their writ denial authored in March 2000.  Further, and more importantly, the Third Circuit noted that these claims were time barred by the provisions of LSA C.Cr.P. art. 930.8 which provides for a two year limitations period for filing post-conviction relief. Petitioner cannot rely on the protracted and repetitive litigation which resulted in the Third Circuit's judgment dated October 23, 2003, to toll the limitations period, for, even if those pleadings could be construed as "post-conviction" or "other collateral review" they were not "properly pending" so as to toll the limitations period. See, e.g., *Pace v. DiGuglielmo*, --- U.S. ----, ----, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005) (holding that an untimely state *habeas* petition was not properly filed and did not serve to toll the limitations period).

Clearly, even if petitioner's "Motion to Fix" served to toll the AEDPA limitations period, the pleadings filed subsequent to that pleading could not serve likewise serve to toll the remaining time of the limitations period. Therefore, it is recommended that the petition be dismissed as time-barred.

---

[14] For example, on November 20, 2002, he filed the "Original Application for Writ of Certiorari and Review..." which sought review of a Third Circuit Court of Appeal judgment rendered August 16, 1995 and which complained of the confusion surrounding the December 1999 order appointing counsel. This pleading was however filed in the Fourteenth Judicial District Court and not in the appellate court. [Doc. 15-3, pp. 2389-2470].  Petitioner then waited until May 30, 2003, a period of over six months, before corresponding with the Third Circuit Court of Appeals.  This correspondence was treated as a writ application and dismissed on July 7, 2003, because petitioner failed to provide a copy of the pleading in question.  It was not until July 30, 2003, that petitioner submitted his "Original Application for Writ of Certiorari..." to the Third Circuit.  In his cover letter, he asked the court to construe the pleading as an application for mandamus directing the District Court to act on the pleading he filed in November, 2002. As shown above, a mandamus action could not serve to toll the AEDPA limitations period since mandamus is not considered a "post-conviction" or "collateral" action.  *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir.2002), *cert. denied*, 537 U.S. 1236, 123 S.Ct. 1360, 155 L.Ed.2d 202 (2003).   In any event, as noted by the Third Circuit in their writ denial, the pleading in question merely re-hashed petitioner's long moribund *Brady v. Maryland* arguments.

## 2. Equitable Tolling

Finally, petitioner may not rely upon equitable tolling because his pleadings fail to present any of those "rare and exceptional circumstances"which warrant the application of the equitable tolling doctrine. See *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir.1998); see also *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.2000), *reh'g* granted in part, 223 F.3d 797 (5th Cir.2000); *Felder v. Johnson*, 204 F.3d 168, 171- 72 (5th Cir.2000); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999). His ignorance of Louisiana and/or federal law does not suffice to trigger application of the doctrine. *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

His claim that he was mislead by the District Court's inexplicable December, 1999 order is likewise without merit. As shown above, even if petitioner is given the benefit of every reasonable doubt, the facts establish that he waited more than one year after the December 1999 order before filing his February 2001 "Motion to Fix." Equitable tolling should only be applied if the applicant diligently pursues § 2254 relief. *Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir.2000); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.2000); *Coleman v. Thompson*, 184 F.3d 398, 403 (1999), *cert. denied* 120 S.Ct. 2564 (2000).

These circumstances are not extraordinary enough to qualify for equitable tolling under § 2244(d)(1). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman*, 184 F.3d at 402 (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996). A "'garden variety claim of excusable neglect'" does not support equitable tolling. *Id.* In short, equitable tolling is not warranted. See *Myers v. Cain*, 2001 WL 1218763

(E.D.La. Sep 28, 2001), affirmed by *Myers v. Cain*, 55 Fed.Appx. 716, 2002 WL 31933051 (5th Cir. 2002), *cert. denied*, 538 U.S. 1020, 123 S.Ct. 1947, 155 L.Ed.2d 862 (2003).

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 28th day of April, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE